**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| RONALD HILL, JR., | * |
| Plaintiff, | * |
| v. | * Case No.: GJH-18-3185 |
| C.O. STURGIS, *ET AL.*, | * |
| Defendants. | * |

**MEMORANDUM OPINION**

Plaintiff Ronald Hill, Jr. has filed this action pursuant to 42 U.S.C. § 1983 claiming that correctional officers failed to protect him from violent attacks perpetrated by two inmates while he was incarcerated at Eastern Correctional Institution ("ECI").[1] ECF No. 1. Pending before the Court is a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants Correctional Officers ("C.O.") Jermaine Sturgis, Vernon Collins, and Matthew Parsons, Captain Daniel Barnes, Warden Ricky Foxwell, and Commissioner Dayena Corcoran. ECF No. 11. Hill opposes the motion. ECF No. 13. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, Defendants' motion, construed as a Motion for Summary Judgment, is granted.

---

[1] While this case has been pending, Hill was transferred to Baltimore City Correctional Center, *see* ECF No. 14, and thereafter transferred to Dorsey Run Correctional Facility ("DRCF"), *see* ECF No. 15.

1

## I. BACKGROUND[2]

### A. July 3, 2018 Incident

Hill alleges that on July 3, 2018, at approximately 5:45 a.m., inmate Mark Summerville, a member of the prison gang known as Dead Men, Inc. ("DMI"), yanked Hill out of his bed while he was sleeping and repeatedly punched and kicked him until he lost consciousness. ECF No. 1 at 2.[3] When Hill awoke, he heard Summerville yelling out to inmate Anthony Johnson that he had beaten Hill and explaining how he had done so. *Id*. According to Hill, Johnson responded that Summerville should "do it again and he would pay him again." *Id*. Hill states that he told Defendants C.O. Jermaine Sturgis and C.O. Vernon Collins, but they left him without help. *Id*. Hill does not specify when or what he told Sturgis and Collins. *Id*.

In declarations signed under oath, Officers Sturgis and Collins deny any knowledge of the alleged assault against Hill on July 3, 2018, and they deny that Hill ever reported to either of them that he had issues with inmates Summerville or Johnson. ECF No. 11-3; ECF No. 11-4. Sturgis states that if an inmate reports he is having a problem or being threatened by another inmate, the normal practice is to report the information to the Officer in Charge of the Housing Unit as neither he nor Collins are authorized to reassign inmates to different cells. ECF 11-3. Collins states further that on July 3, 2018, he was not at work and therefore could not have been involved in any manner with the alleged incident. ECF No. 11-4. Post Assignment Worksheets confirm that Collins did not work that day. ECF No. 11-5.

Defendant Captain Daniel Barnes states in a signed declaration that he has no recollection of "being a part of the investigation concerning Inmate Hill." ECF No. 11-6. Barnes does not

---

[2] Because the Court construes Defendants' motion as a Motion for Summary Judgment, these facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-moving party.
[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

specify which incident he cannot recall, nor does he address whether he was otherwise aware of the issues noted by Hill in his Complaint. *Id*. Similarly, Lt. Stephen Elliott,[4] the Housing Unit Manager, states Hill never complained to him about Summerville and he was never advised that Hill had been threatened or assaulted by inmate Mark Summerville. ECF No. 11-13 at 1.

Hill's verified medical records, dated from July 1, 2018 through December 26, 2018, do not contain any documented complaints regarding an assault taking place on July 3, 2018. ECF 11-8.[5] The medical records do indicate, however, that Hill was injured in a fight with another inmate on August 30, 2018. ECF No. 11-8 at 26–27, 30. Defendants do not address the August 30, 2018 incident.

### B. September 13, 2018 Incident

Hill alleges further that on September 13, 2018, he and cellmate David Gillis notified Defendant C.O. Matthew Parsons that if Hill was not removed from the cell, Gillis would harm Hill. He maintains that Parsons "walked away" in response to those statements. Hill claims that Parsons' failure to act provided Gillis with the "time and opportunity" to beat him "with a segregation tray." *Id*.

This incident was investigated and summarized in a Memorandum prepared by Acting Security Chief Walter Holmes for purposes of a Serious Incident Report. ECF No. 11-9 at 1. Officer Daric Evans was in the Housing Unit at approximately 7:55 p.m., when he heard "several inmates banging and kicking their cell doors" on B-tier. *Id*. Upon investigation, Evans discovered Hill and Gillis engaged in a fight, notified other officers via radio call "10-10" of the

---

[4] Lt. Elliott is not named as a Defendant.
[5] Most of the 134 pages of medical records are irrelevant to the matters asserted in the Complaint and pertain to issues such as vaccinations, advanced care directives, dental care, releases of responsibility declining certain treatment or medication, informed consent for participation in psychology services, and other unrelated medical conditions.

3

situation, and ordered both inmates to approach the slot in the cell door in order to be handcuffed. *Id*. Both inmates complied, and both were escorted to the medical unit for evaluation. *Id*.

Gillis sustained small, superficial scratches to his neck. *Id*. Hill's medical records show that he was treated for head trauma as a result of being struck multiple times with the heavy plastic tray and suffered "bilateral facial contusions, marked swelling around the left eye, chest and neck abrasions." ECF No. 11-8 at 34. Hill was sent out to a hospital for a CT scan. *Id*. Later that day, nursing comments indicate that Hill had bruising to both eyes and a laceration above his left eyebrow. *Id*. at 36. The nurse, Melinda L. Diercks, reported that Hill told her that "when he woke up his cell buddy was standing over him" and that he began to yell for help and correctional officers arrived to assist. *Id*. Upon his return to the prison, Hill was admitted to the ECI Infirmary for observation. ECF No. 11-8 at 42–48, 97–99.

After the incident, both Hill and Gillis were charged with violation of the institutional rule prohibiting assault or battery on another inmate. ECF No. 11-9 at 9, 12. Gillis was additionally charged with possessing, using, or manufacturing a weapon. *Id*. at 12.

Hill provided the following statement regarding the incident with Gillis:

> My room-mate was screaming out the back window to someone on C-Tier about checking on me (rumors of me being gay)[.] He (David Gillis) described me to him and he said that it's me and he (David Gillis) threatened my health, safety and life – if I didn't kick and bang on door to alert officers to move me. I kicked and alerted officers to get me out of the cell and no officer took me out of cell. My room-mate struck me with a food tray and I woke up to him hitting me again with [the] tray and threw bleach on me.

ECF No. 11-9 at 21. Gillis refused to provide a statement. *Id*. at 22. An investigation conducted by the Internal Investigation Division ("IID") resulted in criminal charges of second-degree assault against Gillis. ECF No. 11-10 at 7–8, 39–43.

4

Contrary to Hill's assertions, Officer Parsons denies being told by either Gillis or Hill on September 13, 2018, that Gillis would harm Hill if Hill was not removed from the cell, and he denies that he simply walked away. ECF No. 11-12 at 1. Parsons also denies ever being asked by either inmate to remove Hill from the cell at any other time. *Id*. Parsons explains that had either of them informed him of the need for separation, he would have reported it to the Officer in Charge of the Housing Unit because he does not have the authority to move inmates from their assigned cells. *Id*. Lt. Elliott also states that he never received any reports that Gills made Hill fear for his safety. ECF No. 11-13 at 1.

### C. Internal Complaints

Hill's internal "Enemy Alert" list indicates that on January 16, 2018, he named inmates Freddie Parker and Anton James as threats to his safety. ECF No. 11-14. On August 31, 2018, Hill indicated that inmate James Tayman was a threat to his safety because he had stabbed Hill. *Id.* Gillis was named an enemy on September 14, 2018, following his assault on Hill. *Id.* Summerville is not listed as an enemy. *Id*.

On September 21, 2018, Hill filed a Request for Administrative Remedy ("ARP") about the September 13, 2018 incident. ECF No. 11-15. It was dismissed for procedural reasons on September 22, 2018 because the incident was already being investigated by IID. *Id.* Notably, Hill does not claim he told Parsons about Gillis's threat in this ARP; rather, he states that he "asked the tier worker to let any officer know that [he was] in need of emergency assistance" and that "no officer came to help." *Id.* at 1. Hill does, however, claim that Gillis informed Parsons of his intent to do Hill harm if Parsons did not remove Hill from the cell. *Id*. at 2.

Hill filed a second ARP on October 1, 2018 in which he complained about his move to C-Tier, which is known to house gang members, after the disciplinary charges against him

5

related to the September 13, 2018 incident were dropped. ECF No. 11-16. This ARP was dismissed that same day because inmates may not seek to address complaints related to case management recommendations and decisions through the ARP process. *Id.*

On October 16, 2018, Hill filed a grievance complaint with the Inmate Grievance Office complaining that he was physically assaulted by different inmates on various dates between the months of June 2018 and September 2018. ECF No. 11-17. This grievance is currently pending, and no administrative decision has been made. *Id.*

### D. Procedural History

On October 12, 2018, pursuant to 42 U.S.C. § 1983, Hill filed a Complaint in this Court against Officers Collins, Sturgis, and Parsons, Captain Barnes, Warden Ricky Foxwell, Commissioner Dayena Corcoran, Nurse Nicole Frey, and inmates Summerville, Johnson, and Gillis. ECF No. 1. On February 28, 2019, Defendants Collins, Sturgis, Parsons, Barnes, Foxwell, and Corcoran filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 11. As of that date, Defendants Grey, Summerville, Johnson, and Gillis had not been served. Hill filed an opposition to the Motion on March 11, 2019. ECF No. 13.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires

> more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require a defendant to establish "beyond doubt" that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

When, as here, matters outside the pleadings are presented to the Court, a 12(b)(6) motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed. R. Civ. P. 12(b)). A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-

moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. DISCUSSION

Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be construed as a Motion for Summary Judgment because matters outside the pleadings will be considered by the Court. In support of its Motion, Defendants contend that the undisputed facts in the record fail to prove that Hill is entitled to relief under § 1983, there is no legal basis for finding Warden Foxwell, Captain Barnes, or Commissioner Corcoran liable for an Eighth Amendment failure-to-protect violation, and the Defendants are protected by qualified immunity. The Court concludes that Defendants Barnes, Collins, Corcoran, Parson, Foxwell, and Sturgis are entitled to summary judgment as a matter of law. The Court concludes further that Defendants Frey, Summerville, Johnson, and Gillis, the Defendants who have never been served with the Complaint, are also entitled to dismissal of the claims against them.

### A. Failure-to-Protect Claims

The Court interprets the claim against Defendants Sturgis, Collins, Parsons, Barnes, Foxwell, and Corcoran to be an Eighth Amendment failure-to-protect claim. In order to prevail on such a claim, Hill must establish that Defendants exhibited deliberate or callous indifference

9

to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, Hill "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to

"assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, Hill must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk in the usual ways including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128 (quoting *Farmer*, 511 U.S. at 842) (internal quotation marks omitted).

Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. "In failure to protect cases, prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Raynor*, 817 F.3d at 128 (internal quotation marks omitted) (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)); *Thompson v. Virginia*, 878 F.3d 89, 108 (4th Cir. 2017) ("[P]rison officials are not liable if taking action would endanger their own lives or if the harm occurred despite their reasonable efforts to prevent it."). Failure to take any reasonable

11

action in an ongoing assault, however, can amount to deliberate indifference. *See Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (holding correctional officers were deliberately indifferent to prisoner's substantial risk of serious harm where correctional officers failed to take reasonable action after prisoner repeatedly informed them that he feared for his safety before he was beaten); *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) (finding no deliberate indifference where unarmed prison officials did not intervene in an armed attack immediately but called for backup).

> i. **Officers Sturgis and Collins**

There are insufficient facts in the record to support a failure-to-protect claim against Officers Sturgis and Collins related to the July 3 incident. In his Opposition,[6] Hill explains that he is unsure of the date on which he was assaulted by Summerville, but he states that it was the same day he was moved to Housing Unit 4, Tier C, Cell 6. ECF 13 at No. 3–4. Inmate Hadji Johnson[7] was occupying Hill's new cell and informed officers that he did not intend to let Hill have the bottom bunk, which Hill was required to have due to a seizure disorder, and he threatened to hurt Hill if they moved him into the cell. *Id*. at 2, 3. Johnson was apparently removed from the cell, and "a day or two later," Summerville was moved into the cell with Hill. *Id*.

Hill states that Sturgis and Collins walked away from him after he told them about Summerville and Johnson communicating with each other about Hill, placing him in fear of assault. *Id*. at 4. It is unclear from the Complaint, the Opposition, and the rest of the evidence in the record what Hill told Sturgis and Collins about the threat to his safety. Without evidence of

---

[6] Hill's Opposition is not supported with a statement under oath, but given his *pro se* and incarcerated statuses, the Court will still consider statements made in the Opposition.
[7] The Complaint refers to an "Anthony Johnson" and lists "Anthony Johnson" in the caption, but the Opposition mentions only "Hadji Johnson." It is not clear if these individuals are the same.

12

what Hill communicated to Sturgis and Collins, no jury could reasonably find that their alleged failure to act upon Hill's statements contributed to an injury or demonstrated callous indifference to a specific known risk of harm. *See Pressly*, 816 F.2d at 979. Officers Sturgis and Collins are therefore entitled to summary judgment in their favor.

        **ii.     Officer Parsons**

There is also insufficient evidence to support a failure-to-protect claim against Officer Parsons related to the September 13 incident. The record reflects that Hill's claim against Officer Parsons has varied over time. In Hill's statement provided after he was assaulted by Gillis, Hill did not claim that he spoke to Parsons before the assault took place; rather, he claimed he kicked the cell door to alert officers, but nobody responded. ECF 11-9 at 21. Later, Hill claimed that he told the inmate worker on the tier to tell an officer that Gillis was threatening him, but no officer came after he made that request. ECF 11-15 at 1. In the Complaint, Hill alleges that he and Gillis notified Parsons of Gillis's threat and that he walked away in response. ECF No. 1 at 2. In his Opposition, Hill claims that he "specifically told him that I'm in fear for my life, health & safety" and that Parsons responded, "he has to call the lieutenant." ECF No. 13 at 8. Hill further claims that after he made that statement, Gillis pushed him out of the way and "told Ofc. M. Parsons to get me out of the cell or he would harm me" and Parsons repeated his response. *Id*. at 9. According to Hill, as soon as Parsons and "the other three officers" left, Gillis began his violent assault against Hill using a plastic food tray that was inside the cell. *Id*.

There is no dispute between the parties that Hill was violently assaulted by Gillis; however, Hill fails to produce or reference evidence to support his claim that Parsons was forewarned about the assault and chose to do nothing to stop it. *See* Fed. R. Civ. P. 56(e) (addressing failure of a party to properly support an assertion of fact). While Hill references

13

surveillance video[8] from the housing unit tier as a potential source of evidence to support his claim, surveillance video from the stationary cameras in the prison do not record sound and, at most, the video may show Parsons in the vicinity of Hill's cell prior to the assault. Assuming Parsons was in the vicinity of Hill's cell prior to the assault, Hill does not offer evidence beyond his pleadings to establish that prior to the date of the assault, Parsons or other correctional officers were aware that Hill was in danger. Further, assuming Hill's allegation that he and Gillis told Parsons that Hill needed to be moved is true, Parsons' alleged response that he would speak with the officer in charge of the housing unit does not exhibit deliberate indifference for Hill's safety. Rather, it evidences an intent to address the request through established, appropriate procedures. This is insufficient to support a failure-to-protect claim.

Moreover, Gillis's choice to engage in a criminal assault against Hill despite Parsons' alleged statement indicating he would have Hill moved is far beyond what Parsons allegedly had knowledge of. While "[d]irect evidence of actual knowledge is not required" it may be established "through circumstantial evidence showing . . . that the 'substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it.'" *Makdessi*, 789 F.3d at 133 (quoting *Farmer*, 511 U.S. at 842). Here, Hill alleges that Parsons was told on a single occasion that Hill needed to be removed from the cell with Gillis and that Parsons responded by indicating that he would contact the officer in charge. This evidence falls short of establishing

---

[8] Hill states "[a]ll of these events that I've been speaking of can be proven through camera footages . . . the letters that I've sent to the Commissioner Dayena Corcoran, Warden Ricky Foxwell – I also have all the responses, ARP's, actual dates and times in my file @ PRISM." ECF No. 13 at 11. The documents and evidence that Hill apparently has in his possession have not been shared with this Court.

14

the type of obvious danger contemplated by *Farmer*. Thus, the Court finds that, given the totality of the evidence in the record, Officer Parsons is entitled to summary judgment in his favor.

### iii. Captain Barnes

The record lacks sufficient evidence to support a failure-to-protect claim against Captain Barnes. Although the Complaint itself contains no specific allegation against Barnes and simply names him as a Defendant in the caption, Hill states in his Opposition that he met with Barnes about the July 3 incident on July 16, 2018. ECF No. 13 at 5. Hill recalls that upon arriving at the meeting, Barnes had a copy of a letter he had sent to Commissioner Corcoran and that Barnes asked him what he wanted to do about the incident involving Summerville. *Id*. Hill told Barnes he wanted "everyone who was involved held responsible for their actions and/or neglect and carelessness." *Id*. at 6. According to Hill, Barnes was "surprised and bewildered [] about everything being swept under the rug" and promised he would move Summerville to a different compound. Hill claims, however, that Summerville was still on the same compound with him two days later. *Id*. at 5, 6. He explains that Summerville sent a note to Hill's housing unit on August 30, 2018 in an attempt to have Hill stabbed by Summerville's fellow gang members. *Id*. Hill was later stabbed in his left forearm by his cell mate James Tayman. *Id*.

Although Hill cannot properly amend his Complaint through his Opposition, *see Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015), Hill's claim is deficient regardless because there is insufficient evidence regarding Barnes' knowledge of a substantial risk of harm to Hill. Absent from the record is any explanation from Hill regarding the content of the letter he sent to the Commissioner or what he told Barnes during their conversation. Hill's interpretation of Barnes' response as "surprised and bewildered" does nothing to expound on the nature of the information to which Barnes was

15

reacting. Furthermore, Hill's demand that everyone involved be held responsible does not reasonably support a conclusion that Hill wanted measures taken to ensure his personal safety, and Barnes' promise that he would move Summerville to another compound and the fact that it had not been fulfilled two days later does not reasonably rise to the level of callous indifference required to support a failure-to-protect claim. Barnes is thus entitled to summary judgment in his favor as there is no evidence he exhibited a callous disregard for Hill's safety.

### iv. Warden Foxwell and Commissioner Corcoran

There is insufficient evidence to impose supervisory liability upon Warden Foxwell or Commissioner Corcoran for any failure to protect Hill. The only allegation against Warden Foxwell, which is raised for the first time in the Opposition, is that Hill wrote to him twice and asked him to look into why he was placed on disciplinary segregation after he was assaulted by another inmate. ECF No. 13 at 7. Foxwell told Hill on both occasions that Hill should wait for his disciplinary adjustment hearing. *Id*. Hill's claim against Commissioner Corcoran is less clear, but it also appears to be based on Hill contacting the Commissioner and not receiving the relief he wanted. *Id*. at 5 (referencing a letter that Hill sent to the Commissioner).

Liability under the doctrine of *respondeat superior* is not available for § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (stating that there is no *respondeat superior* liability under § 1983). A defendant's status as a supervisor does not make them liable for any alleged wrongdoing by their subordinates; thus, without more, notification of supervisory personnel regarding a complaint is insufficient to state a claim for a supervisor's liability. *See id.*

Instead, liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268

F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, there is no evidence upon which to infer actual or constructive knowledge on the part of either Foxwell or Corcoran. Beyond Hill's assertion that he asked Warden Foxwell why he was confined to disciplinary segregation following an assault and the unknown contents of a letter to Commissioner Corcoran, there is nothing on this record to indicate that Foxwell and Corcoran had any knowledge of conduct that would put Hill in harm's way, that they had an opportunity to intervene into clearly unconstitutional acts committed by their subordinates but deliberately failed to do so, or that they actively encouraged conduct that runs afoul of the Eighth Amendment's proscription against cruel and unusual punishment. As such, Foxwell and Corcoran are entitled to summary judgment.

Because there is insufficient evidence to support a failure-to-protect claim against Defendants Sturgis, Collins, Parsons, Barnes, Foxwell, and Corcoran, they are entitled to summary judgment as a matter of law and the claims against them must be dismissed.

### B. Claims against Unserved Defendants

#### i. Nurse Frey

There is insufficient evidence to support any claim under § 1983 against Nurse Frey. Hill's only reference to Nurse Frey in either his Complaint or his Opposition is that he was seen by her after he was assaulted by Summerville. ECF No. 13 at 3–4. There is no allegation that Frey refused to treat Hill for a serious medical need, nor is there a claim that she somehow put Hill at risk for an assault. Thus, the claim against Frey must be dismissed pursuant to 28 U.S.C. § 1915A, which requires this Court to screen prisoner complaints and dismiss any that are "frivolous, malicious or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief."

#### ii. Inmates Summerville, Johnson, and Gillis

Finally, there is insufficient evidence to support any § 1983 claim against Summerville, Johnson, and Gillis, the three inmates who assaulted Hill. In order to pursue a constitutional claim under 42 U.S.C. § 1983, Summerville, Johnson, and Gillis must have been acting "under color of state law." While Hill may have a tort law action under state law available to him against Summerville, Johnson, and Gillis, such a claim is not a federal claim as none of the three inmates are state actors.

To the extent that Hill intended for any state law claims against Summerville, Johnson, and Gillis to be considered by this Court via supplemental jurisdiction, the Court declines to retain supplemental jurisdiction over the claims. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966) ("When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to

dismiss the state law claims without prejudice rather than retain supplemental jurisdiction.").

Thus, these claims must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgement is granted. A separate Order shall issue.

Date: <u>September     23, 2019</u>                         __/s/_____
                                                                            GEORGE J. HAZEL
                                                                            United States District Judge